IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| DAISY F., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:21-cv-563 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Daisy F. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the January 14, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 8.

Presently before the Court are the parties' cross motions for summary judgment, ECF Nos. 12, 15. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 12, be **GRANTED**, the Commissioner's Motion for Summary

Judgment, ECF No. 15, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED.**

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB on August 5, 2019, alleging disability due to: hypertension; heart problems; breast cancer stage three in remission; and spine, right knee, and left shoulder problems. R. at 87.[1] Plaintiff's application was initially denied on November 26, 2019, and again denied upon reconsideration on May 22, 2020. R. at 117; 123. On June 2, 2020, Plaintiff requested a hearing before an administrative law judge. R. at 130.

A telephonic hearing was held on November 5, 2020, at which Plaintiff appeared with counsel before Administrative Law Judge Monica L. Flynn ("ALJ"). R. at 31–83. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 33–83. On April 1, 2021, the ALJ issued a decision finding Plaintiff not disabled. R. at 15–30. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on August 2, 2021, making the ALJ's decision the final decision of the Commissioner. R. at 1–6.

Having exhausted her administrative remedies, on October 6, 2021, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. On April 25, 2022, Plaintiff filed a motion for summary judgment and accompanying memorandum in support. ECF Nos. 12–13. On May 24, 2022, the Commissioner filed a motion for summary judgment and accompanying memorandum in support. ECF Nos. 15–16. Plaintiff did not file a reply. Because the motions are fully briefed, the matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

The Record included the following factual background for the ALJ to review:

---

[1] "R." refers to the certified administrative record that was filed under seal on January 14, 2022. ECF No. 7, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).

2

Plaintiff initially alleged her disability onset date was July 1, 2016, but later amended this to March 1, 2018. R. at 39. Plaintiff was born on November 13, 1964, and was fifty-three years old at the time of her alleged disability onset date. R. at 39; 173. Plaintiff lives with her husband and father. R. 45. Plaintiff previously worked as a bank teller for almost nine years, R. at 45; 106, a taxicab starter for almost one year, R. at 46; 59; 106, an office assistant, R. at 43, a teacher assistant or aide for almost six years, R. at 106; 222, and made masks during the beginning of the COVID-19 pandemic. R. at 55–56. Plaintiff graduated from high school and received a community college certificate in Social Studies. R. at 44.

### A. Plaintiff's Medical Records Relevant to Alleged Physical Impairments

Plaintiff has an extensive history of medical treatment. R. at 197–221; 229–37; 260–67; 304–07; 339–2228. Plaintiff has a variety of physical impairments: stage three breast cancer in remission, major joint dysfunction, spine disorders, hypertension, obesity, ischemic heart disease, hyperlipidemia, hemolytic anemia, dyspnea, edema, knee, wrist, and shoulder problems, and has had reconstruction surgeries and an appendectomy. R. at 91; 96; 100–03; 2135.

Plaintiff was diagnosed with breast cancer in July 2016 and underwent chemotherapy from August to October 2016. R. at 23, 345; 360; 381. Plaintiff had a double mastectomy on October 27, 2016. R. at 345; 360; 381; 530. Plaintiff also had a left modified radical mastectomy and prophylactic right simple mastectomy. R. at 53. She then underwent radiation treatment from December 2016 to January 2017. R. at 23. Plaintiff had breast reconstruction in March 2018. R. at 345; 351; 361. After these procedures, Plaintiff experiences swelling in her left upper extremity from lymphedema, R.at 50; 493; 495; 497; 499; 503, and Plaintiff alleges her range of motion in her left shoulder is decreased and she has tightness and pulling in her left trunk and axilla. R. at 530.

3

Plaintiff's primary care physician Dr. Glenn P. Bidwell ordered radiographic imaging because Plaintiff reported she experienced shoulder, upper arm, and neck pain, which suggested cervical radiculopathy. R. at 101; 363; 1308-1310; 1729; 1776; 1969; 2198. Plaintiff's imaging showed: severe left C4-C5 foraminal stenosis; mild C4-C6 spondylosis; mild C4-5 disc narrowing; moderate central canal stenosis at the C3-C4 level with a four and a half millimeter central disc extrusion with mild ventral cord deformity and moderate central stenosis; subtle central disc extrusion extending slightly below the disc space with mild central stenosis at the C4-5 level; and two millimeter central disc extrusion with mild central stenosis and mild ventral cord deformity at the C5-6 level. R. at 101; 363; 1310; 1729; 1776; 1969; 2198. Plaintiff sought treatment from Virginia Orthopaedic and Spine Specialists because Plaintiff reported experiencing shoulder, arm, and back pain. R. 2064–228. Plaintiff received a medical source treatment from Dr. Nikolas Pezzella at Virginia Orthopaedic and Spine Specialists. R. at 2219–28. Dr. Pezzella's treating source statement said Plaintiff was first seen on February 17, 2020 and is seen every one to two months. R. at 2225. Dr. Pezzella further reported that Plaintiff had cervical impairments and lymphedema. *Id.* Dr. Pezzella reported Plaintiff would be able to maintain attention and concentration for about two hours before requiring a break for pain or medication side effects, and that Plaintiff would likely be absent from work one day per month as a result of her impairments and/or treatments. *Id.* Dr. Pezzella reported Plaintiff would be able to sit and stand or walk for eight hours per day and did not require the option to sit or stand at will. R. at 2226. Dr. Pezzella reported Plaintiff did not need a cane or device to walk or ambulate effectively. R. at 2226–67. Dr. Pezzella reported a few lifting, carrying, and other limitations because of Plaintiff's reported pain and lymphedema. R. at 2226–28. Dr. Pezzella wrote his treating source statement was "answering just for spine: [patient] also has a host of other conditions we do not treat." R. at 2225.

Plaintiff's cardiologist Dr. Jayaraman Ventakenson treats Plaintiff's ischemic heart disease and heart palpitations. R. at 18; 360; 364; 368; 888; 1302. Plaintiff takes a variety of medications for heart conditions. R. at 370. Plaintiff also had a nuclear stress test in October 2017, which showed moderate concentric hypertrophy, mild tricuspid valve regurgitation, and moderate ischemia. R. at 882; 890–91. Plaintiff had an echocardiogram in March 2019, which showed left ventricular moderate concentric hypertrophy, mild mitral valve regurgitation, and mild tricuspid valve regurgitation. R. at 882.

### B. Testimony By The Vocational Expert

Vocational Expert Herman Bates ("VE") testified at the ALJ hearing. R. at 58–83. The Plaintiff is not arguing there was an issue with the ALJ's acceptance of the VE testimony, so the Court does not consider it.

### C. Relevant Physical Evaluations Completed by State Agency Examiners

State agency Dr. Robert McGuffin conducted an initial disability determination for Plaintiff. R. at 84–94. Dr. McGuffin found Plaintiff not disabled. R. at 92. Dr. McGuffin found that a function report regarding Plaintiff's daily living activities was needed to fully evaluate Plaintiff's allegations, limitations, and current functioning. R. at 90. Dr. McGuffin reported Plaintiff's authorized representative and Plaintiff failed to forward required forms, so the evidence was insufficient to process Plaintiff's claim. R. at 90.

State agency Dr. William Rutherford, Jr. conducted a reconsideration of Plaintiff's medical record and on May 20, 2020, found Plaintiff not disabled. R. at 107. Dr. Rutherford conducted a reconsideration of Plaintiff's disability claim because Plaintiff reported her "conditions have become more severe and cause [her] greater limitations." R. at 96. Dr. Rutherford noted Plaintiff had "[l]imitations secondary to pain and obesity, BMI > 45." R. at 104. Dr. Rutherford found

Plaintiff reported decreased pain, Plaintiff's motion and gait were preserved, Plaintiff's severity of symptoms and the alleged effects on her function were not entirely consistent with the evidence, and some of Plaintiff's symptoms appeared to be disproportionate to the severity and duration that would be expected. R. at 103. Dr. Rutherford reported Plaintiff's conditions pose some limitations on her ability to work, but she was not prevented from performing her previous job of an office assistant. R. at 107. Dr. Rutherford opined Plaintiff's condition was not severe enough to keep her from working. R. at 107.

### D. Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing, Plaintiff amended her alleged disability onset date to March 1, 2018. R. at 39. Plaintiff testified about her work history and why she alleges she is unable to work or perform her previous jobs. R. at 45–48. Plaintiff alleges she is unable to work as a bank teller because she is unable to stand and sit for a long period of time and is unable to lift coin boxes. R. at 45–46. Plaintiff testified she is unable to work as a taxicab starter because of her physical impairments. R. at 48.

Plaintiff further testified about her physical impairments. R. at 46–58. At the ALJ hearing, Plaintiff was 5'6" and 280 pounds, which is a body mass index of forty-five and is classified as obese by the National Institutes of Health. R. at 20–21. Plaintiff explained tasks such as cooking, folding clothes, and making her bed exacerbate her arm pain, which she feels from her elbow to her wrist. R. at 48. Plaintiff is able to sit in a straight-back dining room chair for fifteen to twenty minutes and is able to stand in line for ten to fifteen minutes. R. at 52. Plaintiff has numbness in two of her fingers and she does not pick up heavy items. R. at 52–53. Plaintiff only shops at two stores because she uses a driving cart. R. at 52. As for her activities, Plaintiff stated she is able to

walk the length of her house, clean around her house, do most of her personal care for herself, and goes to her cancer doctor every four months. R. at 52–54.

### E. Plaintiff's Function Report

Plaintiff submitted a Function Report on January 22, 2020. R. at 238–46. Plaintiff reported she suffers from pain in her back, arm, and axilla. R. at 238. Plaintiff reported she cooks and cleans for herself and her husband and cares for her pet. R. at 239–40. Plaintiff reported she does not drive when she has inflammation because it is hard for her to look over her shoulder. R. at 241. Plaintiff reported she does not often leave her house. R. at 241. Plaintiff reported her physical impairments affect her ability to lift items, stand, and sit. R. at 242.

### III. THE ALJ'S DECISION

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. § 404.1520(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. § 404.1520(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. § 404.1545(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given his or her

7

residual functional capacity. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. § 404.1520(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had worked after the alleged disability onset date with earnings above substantial gainful activity levels for approximately four months. R. at 17. The ALJ also noted "because [Plaintiff's work above substantial gainful activity levels] will not alter the outcome of this decision, the [ALJ] will reserve the issue of whether the claimant engaged in [substantial gainful activity] since the alleged onset date, and will proceed through the next step in the sequential evaluation process." R. at 17. At step two, the ALJ found that Plaintiff had the following severe impairments: breast cancer, dysfunction of the left shoulder, ischemic heart disease, obesity, and degenerative disc disease. R. at 18. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 19–20.

After step three, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light level work, with the following limitations: Plaintiff would need to alternate to sitting for two to five minutes after every twenty to thirty minutes of standing and/or walking; Plaintiff can operate foot controls bilaterally frequently; Plaintiff can operate hand controls bilaterally frequently; Plaintiff can no more than frequently reach in all directions and handle items with her left hand; Plaintiff can frequently reach overhead to the right; Plaintiff can climb ramps and stairs frequently; Plaintiff can climb ladders, ropes or scaffolds occasionally; Plaintiff can stoop, kneel, and crouch frequently; and Plaintiff can crawl occasionally. R. at 20.

At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a teacher's aide and as a taxicab starter or dispatcher, but the ALJ did not explain what levels she classified these past relevant jobs at. R. at 24–25. Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date, March 1, 2018, through the date last insured, December 31, 2020. R. at 25.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Britt v. Saul*, No. 19-2177, 2021 WL 2181704, at *2 (4th Cir. May 28, 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's

conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio*, 780 F.3d at 637.

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff appeals to this Court challenging the ALJ's decision on the grounds that the ALJ erred by not considering the cumulative effect of Plaintiff's impairments in combination with her obesity.[2] ECF No. 13 at 6–9. Specifically, Plaintiff argues the ALJ failed to consider the cumulative effect of Plaintiff's obesity, cancer-related lymphedema, left shoulder derangement, ischemic heart disease, and cervical spine disease.[3] *Id.* at 6. "[I]n [the ALJ's] RFC analysis – other than mentioning [Plaintiff] testified that she weighed 280 pounds – the ALJ never mentions [Plaintiff's] Class III severe obesity." ECF. No. 13 at 6. Even more specifically, Plaintiff argues "consideration of [Plaintiff's] severe obesity – or omission thereof – was critical to the only two

---

[2] Although Plaintiff identifies a single issue presented, Plaintiff also raises several other arguments in connection with her "issue presented." *See* ECF No. 13 at 6–9. For example, Plaintiff also appears to take issue with the ALJ's analysis of Dr. Rutherford's opinion and Dr. Pezzella's opinion, as well as the ALJ's failure to cite specific evidence showing improvements in Plaintiff's pain. *Id.* However, as explained in further detail throughout this opinion, because remand is warranted based on the ALJ's failure to adequately consider Plaintiff's obesity, the Court does not address these arguments.

[3] Plaintiff argues the ALJ failed to consider the cumulative effect of many of her impairments, however Plaintiff's argument focuses almost exclusively on the potential role of Plaintiff's obesity.

10

medical opinions in the case."[4] ECF No. 13 at 6. Plaintiff argues the ALJ's errors were not harmless. ECF No. 13 at 9. Plaintiff contends that the ALJ's error renders her decision without substantial evidence to support it. ECF No. 13 at 6.

In response, the Commissioner argues substantial evidence supports the ALJ's analysis of Plaintiff's obesity, the ALJ reasonably evaluated the medical opinions in the record, and the ALJ considered the medical opinions in the record under the appropriate legal framework. ECF No. 16 at 10–18. The Commissioner argues that the ALJ did account for Plaintiff's obesity in her RFC assessment, pointing to the ALJ's citation to medical opinion notes which indicated Plaintiff's body mass index. ECF No. 16 at 10. Specifically, the Commissioner argues the ALJ adequately discussed Plaintiff's obesity because she recognized it as a severe impairment, considered Plaintiff's obesity at step three, and "discussed treatment notes providing a record of Plaintiff's weight and body mass index in the RFC discussion." ECF No. 16 at 10. The Commissioner contends that the ALJ accounted for Plaintiff's obesity throughout the sequential analysis. ECF No. 16 at 10–11. The Commissioner also argues "Plaintiff has not shown that the record supported additional obesity-related restrictions." ECF No. 16 at 11. The Commissioner further points out that Plaintiff did not mention her obesity at the hearing and did not list obesity as a disabling condition in her disability report. ECF No. 16 at 10. To conclude, the Commissioner argues remand is not warranted because Plaintiff has not explained how the ALJ's decision would have come out differently.[5]

---

[4] The Court understands the Plaintiff may be vaguely attempting to argue the ALJ had a responsibility to further develop the record if the medical opinions did not adequately address Plaintiff's obesity. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). However, the Plaintiff did not make this argument, so the Court does not consider it.

[5] Specifically, the Commissioner cites *Shineski v. Sanders*, 129 S.Ct. 1696, 1706 (2009), highlighting that "'the burden of showing that an error [is] harmful' normally falls upon the party attacking the agency's determination[]." However, the Commissioner makes no other harmless error argument.

11

After step three of the sequential analysis, the ALJ must determine the claimant's RFC. § 404.1520(a)(4). In making the RFC determination, the ALJ must consider "all of the relevant medical and other evidence" in the record and incorporate any impairments supported by objective medical evidence, and those impairments based on the claimant's credible complaints. §§ 404.1545(a)(3), 416.945(a)(3); *Mascio*, 780 F.3d at 635 (citing SSR 96–8p, 1996 WL 374184 (July 2, 1996)).

Importantly, in considering a plaintiff's impairments, "an ALJ must consider the combined effect of a claimant's impairments." *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("Congress explicitly requires that 'the combined effect of all the individual's impairments' be considered, 'without regard to whether any such impairment if considered separately' would be sufficiently severe.") (internal citation omitted). Importantly, "[t]he ALJ must make a particularized finding on the effect of the combination of impairments." *Id.* Consideration of combined impairments specifically includes how obesity might combine with other impairments to create a listed impairment. *Id.*

When courts consider ALJ errors they must decide if the harmless error doctrine applies. *See Mascio*, 780 F.3d at 639. Courts look at "the likelihood that the result would have been different" if the ALJ had not erred. *Shinseki v. Sanders*, 556 U.S. 396, 411 (2009); *Bisceglia v. Colvin*, 173 F. Supp. 3d 326, 333 (E.D. Va. 2016). The Fourth Circuit uses the harmless error doctrine when considering Social Security benefit denial cases. *Keller v. Berryhill*, 754 Fed. Appx. 193, 199 (4th Cir. 2018). In general, the Fourth Circuit has held when an ALJ's decision prevents a court's meaningful review there is harmful error. *See Mascio*, 780 F.3d at 636–37 ("Because we are left to guess about how the ALJ arrived at his conclusions . . . remand is necessary.").

"[T]he ALJ must adequately explain his reasoning; otherwise, [courts] cannot engage in a meaningful review." *Woods*, 888 F.3d at 692–93. Additionally, a court cannot meaningfully review an ALJ's decision based on guesses or conjecture. *Id.* At 694. When an ALJ makes conclusory statements, but fails to elaborate or provide a narrative discussion, then courts are unable to meaningfully review the issue. *Benfield v. Saul*, 827 F. Appx. 297, 300–01 (4th Cir. 2020). Specifically, "it is not the court's responsibility to guess at the ALJ's reasoning." *Id.* at 301.

With these principles in mind, the Court turns to the claim of error here. Social Security Ruling 19-2p sets forth how ALJs should consider obesity when evaluating a disability claim. SSR 19-2p, 2019 WL 2374244 (May 20, 2019).

> Obesity, when established by objective medical evidence (signs, laboratory findings, or both) from an acceptable medical source (AMS), is an MDI ["medically determinable impairment"]. . . . People with obesity have a higher risk for other impairments, and the effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately. Obesity is not a listed impairment; however, the functional limitations caused by the MDI of obesity, either alone or in combination with another impairment(s), may medically equal a listing. Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment(s). We evaluate each case based on the information in the case record.

SSR 19-2p, 2019 WL 2374244, at *2. Furthermore, ALJs must consider "the limiting effects of obesity" in determining the RFC, and must explain the conclusion whether obesity causes any limitations. SSR 19-2p, 2019 WL 2374244, at *4.

> A person may have limitations in any of the exertional functions, which are sitting, standing, walking, lifting, carrying, pushing, and pulling. A person may have limitations in the nonexertional functions of climbing, balancing, stooping, kneeling, crouching, and crawling. Obesity increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities. Obesity may also affect a person's ability to manipulate objects, if there is adipose (fatty) tissue in the hands and fingers, or the ability to tolerate extreme heat, humidity, or hazards.

*Id.*

An ALJ's total failure to mention obesity would be contrary to Social Security regulations and courts would likely remand. SSR 19-2p, 2019 WL 2374244, at *4 ("We must consider the limiting effects of obesity when assessing a person's RFC."). ALJs are required to consider physical impairments the evidence suggests the plaintiff suffers from, even if the plaintiff does not claim or list them as an ailment. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (explaining an ALJ is on notice that a plaintiff's obesity could contribute to the plaintiff's ailments when the evidence suggests the plaintiff is obese). Therefore, even if a plaintiff does not mention obesity, if an ALJ is on notice that a plaintiff is obese then the ALJ should consider it.

When ALJs generally mention obesity without including analysis or discussing the relationship between obesity and other physical impairments and functional abilities, some courts remand. *See Kimberly W. v. Comm'r Soc. Sec.*, No. 4:19-cv-00023, 2021 WL 827075, at *5 (W.D. Va. Mar. 3, 2021). In *Kimberly W.*, the court found the ALJ did not sufficiently provide analysis of a plaintiff's obesity throughout the decision. *Id.* Specifically, the court held "the ALJ did not meaningfully discuss the relationship between [the plaintiff's] 'extreme' obesity and her back, hips, and knee impairments and their effect on her functional abilities." *Id.* In *Kimberly W.*, the ALJ "noted the medical evidence of [the plaintiff's] obesity, found obesity to be a severe impairment, and cited, without elaboration, the SSR for obesity in his step three analysis." *Id.* However, because the ALJ failed to discuss the effect of obesity on the plaintiff's functional abilities this "utter lack of analysis or explanation constitutes a near total failure to examine the effects of [the plaintiff's] obesity." *Id.*

Thus, if "neither the ALJ's RFC analysis nor the opinion evidence that the ALJ relied on mentions Plaintiff's obesity" courts have found remand was appropriate. *Cassandra W. v. Kijakazi,*

No. CBD-20-153, 2022 WL 279828, at *7 (D. Md. Jan. 31, 2022). In *Cassandra W.*, the ALJ found the plaintiff's obesity to be a severe impairment and explained why obesity did not meet a listing on its own. *Id.* However, because the ALJ did not go further and consider obesity in the analysis, the ALJ erred. *Id.*

In considering obesity, when ALJs provide sufficient analysis of obesity, courts generally do not remand. For example, courts have found remand inappropriate where "the ALJ consider[s] and weigh[s] the impact of [the plaintiff's] obesity on her other impairments and the RFC findings throughout the decision." *Katherine T. v. Kijakazi*, No. 6:21-CV-7, 2022 WL 4477703, at *9 (W.D. Va. Sept. 26, 2022). In *Katherine T.*, the Court noted the ALJ found obesity to be a severe impairment at step two, discussed obesity pursuant to SSR 19-2p at step three, and provided a comprehensive analysis at step four of the plaintiff's obesity. *Id.* In that case, the ALJ made the following statement in the decision:

> Pursuant to Social Security Ruling 19-2p, the potential limiting effects of obesity have been considered in finding that the claimant is restricted to a range of sedentary work. The longitudinal medical evidence shows body mass index (BMI) values in the low-to mid-30s over time (e.g., 4F/8, 16F/2, 16F/6). The claimant's obesity could exacerbate her pain and edema. However, even considered in combination with the claimant's other medically determinable impairments, the obesity does not appear to cause complications in the claimant's body to a degree that would cause further work-related limitations beyond those stated above.

*Id.* The court specifically distinguished that analysis from the ALJ's analysis in *Kimberly W.*, where the ALJ only mentioned obesity without providing any additional analysis. *Id.* Importantly, an ALJ's analysis of obesity does not need to be incredibly extensive, but there must be more than an "utter lack of analysis" of the plaintiff's obesity. *Id.* at *8–9. Thus, where an ALJ noted that "'obesity can both cause limitations and aggravate other impairments beyond what the record would otherwise support – e.g., extra weight on diabetic feet,'" courts have found no error because the ALJ highlighted how obesity can exacerbate or impact other physical impairments. *Engle v.*

15

*Comm'r of Soc. Sec.*, No. 5:20-cv-00194-RJC, 2022 WL 902742, at *5 (W.D. N.C. 2022 Mar. 28, 2022).

In this case, the ALJ's limited reference to Plaintiff's obesity is insufficient to determine how, if at all, she actually considered the extent to which obesity may or may not have combined with Plaintiff's other impairments to affect the RFC determination. The ALJ listed the appropriate Social Security Regulations regarding obesity and found Plaintiff's obesity to be a severe physical impairment. As the Commissioner argues, the Plaintiff did not mention her obesity during the ALJ hearing, but that is not determinative. The ALJ, in reciting the language of SSR 19-2p, concluded that, since "no medical source opined that the claimant's obesity medically equals the criteria of another impairment" she could not find that Plaintiff's obesity did combine with another impairment to meet a medical listing. R. at 20. However, the ALJ failed to analyze Plaintiff's obesity either separately or in combination with other impairments in establishing the RFC. While the ALJ stated "[i]n accordance with SSR 19-2p, the undersigned has considered the claimant's obesity in the following residual functional capacity assessment," *id.*, nowhere in the rest of her Decision does she explain *how* she considered it and what conclusions she drew from that consideration. R. at 20–24. Consequently, the ALJ's analysis is insufficient because it is not robust enough for this Court to determine whether the ALJ properly considered obesity. The ALJ's general remarks about Plaintiff's height and weight and the fact that Plaintiff represented she is interested in losing weight is not enough.

Similar to *Kimberly W.*, the ALJ in this case did not provide a meaningful discussion or analysis of Plaintiff's obesity for the Court to consider. In *Kimberly W.*, the ALJ noted the medical evidence of obesity, found obesity was a severe impairment, and cited the Social Security Regulations for obesity. *Kimberly W.*, No. 4:19-cv-00023, 2021 WL 827075, at *5. In this case,

the ALJ classified Plaintiff's obesity as a severe impairment. R. at 18. The ALJ also noted the Plaintiff's body mass index was forty-five, reported the Plaintiff's height and weight from the ALJ hearing, and opined that such findings classify Plaintiff as obese. R. at 20–21. The ALJ also acknowledged that SSR 19-2p is the appropriate standard under which to consider obesity.[6] R. at 20. However, the ALJ goes no further in considering Plaintiff's obesity. As was the case in *Kimberly W.*, the ALJ did not "discuss the standard for ALJ's to evaluate the effects of a [plaintiff's] obesity on her functional abilities at any of the other steps of [her] analysis." *Kimberly W.*, No. 4:19-cv-00023, 2021 WL 827075, at *5.

Unlike other cases where courts have found no error and did not remand, here the ALJ did not adequately consider Plaintiff's obesity and how it might affect her other impairments. For example, unlike in *Engle* where the ALJ noted the affect obesity can have on diabetic feet, this ALJ did not highlight how Plaintiff's obesity affects or could affect the variety of physical impairments from which Plaintiff suffers. Moreover, unlike *Katherine T.*, the ALJ in this case did not consider Plaintiff's obesity at step four of the sequential analysis. In *Katherine T.*, the ALJ wrote "[t]he claimant's obesity could exacerbate her pain and edema." *Katherine T. v. Kijakazi*, No. 6:21-cv-7, 2022 WL 4477703, at *9. In this case, the ALJ did not include any consideration about how Plaintiff's obesity might affect Plaintiff's several other physical impairments. As a result, the Court must conclude that the ALJ's failure to provide sufficient analysis of Plaintiff's obesity in her decision precludes the Court from determining the reasoning and basis for her RFC decision. *Woods*, 888 F.3d at 694.

---

[6] The ALJ also wrote "the undersigned cannot make assumptions about the severity or functional effects of obesity combined with other impairments . . ." R. at 20. In the same paragraph, the ALJ writes "[i]n accordance with SSR 19-2p, the undersigned **has** considered the [Plaintiff's] obesity in the following residual functional capacity assessment." R. at 20 (emphasis added). This Court is unsure how these two statements can be reconciled.

17

Additionally, the Court notes that the ALJ also failed to consider the cumulative effect of Plaintiff's cancer-related lymphedema, left shoulder derangement, ischemic heart disease, and cervical spine disease, a point Plaintiff mentions only briefly in her memorandum. ECF No. 13 at 1, 6. While ALJ did discuss Plaintiff's physical ailments separately and explained why these ailments do not meet a listing on their own, R. at 18–20, as with the effect of obesity on her other impairments, the ALJ does not appear to have conducted the cumulative analysis required. On remand, the Commissioner should consider providing a more fulsome analysis of this, as well.

## VI. RECOMMENDATION

For the reasons stated above, the ALJ failed to consider the cumulative effect of Plaintiff's impairments, specifically her obesity, and therefore the ALJ's RFC determination is not supported by substantial evidence. This defect cannot considered harmless error, because the Court is unable to properly evaluate the ALJ's analysis. This Court is not deciding the ultimate question of whether Plaintiff is or is not entitled to receive disability benefits. The Court is merely finding the ALJ's analysis is lacking, so remand is appropriate.

For these reasons, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment, ECF No. 12, be **GRANTED**, the Commissioner's Motion for Summary Judgment, ECF No. 15, be **DENIED**, and the final decision of the Commissioner be **VACATED and REMANDED.**

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C)

and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

      2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

      The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

/s/ Lawrence R. Leonard  
Lawrence R. Leonard  
United States Magistrate Judge

Norfolk, Virginia  
December 15, 2022